# Exhibit A

| | | |
|---|---|---|
| NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
| | | SUPERIOR COURT |
| FORSYTH COUNTY | 2025 JUN 23 P 3:59 | 25 CVS 3920 |

SOUTH ATLANTIC PACKAGING )
CORPORATION, LLC, )
                                              )
            Plaintiff,        )
                                              )       **COMPLAINT**
v.                                    )
                                              )
HICKORY FARMS, LLC,     )
                                              )
            Defendant.     )

Plaintiff South Atlantic Packaging Corporation, LLC ("SAP"), by and through undersigned counsel, complains of Defendant Hickory Farms, LLC ("Hickory Farms") as follows.

## PARTIES AND JURISDICTION

1. Plaintiff SAP is North Carolina limited liability company headquartered in Forsyth County.

2. Upon information and belief, Defendant Hickory Farms, LLC is a Delaware limited liability company. Hickory Farms has retail outlets throughout the United States, including North Carolina. Hickory Farms also regularly delivers its products to other North Carolina retail outlets.

3. This Court has jurisdiction over the subject matter of this dispute.

4. This Court has personal jurisdiction over Hickory Farms because, among other reasons, the dispute arises out of its longstanding contacts with SAP.

5. Venue is proper pursuant to N.C. Gen. Stat. § 1-82.

## FACTS

6. From 2022 through 2024, SAP provided shipping and packaging services to Hickory Farms to ship Hickory Farms' holiday popcorn tins to Walmart stores across the country.

Case 1:25-cv-00680-LPA   Document 5   Filed 07/30/25   Page 2 of 8

7. Prior to 2022 and 2023, the stacked tins were oriented as follows with structural trays that acted as partial structural supports for the columns of the tins in shipment:



8. In December 2023, Hickory Farms approached SAP and asked if SAP anticipated raising its packaging and shipping fees.

9. SAP responded: "I can say we are looking forward to a much deeper dive into efficiencies on both ends, but I cant see anything that jumps out at me that would have us raising the price considerably. I do think we should strongly consider removing the tray out of the project entirely for Walmart as I do not see any consistency in our field work that suggested they were using it. *I do see that strengthening the corner supports and doing a long distance road test as being important to next years element considerations with estimating the job for next year.*" (emphasis added).

10. Hickory Farms, however, did not do any long-distance road tests for any new designs.

4902-9432-1226.v3

Case 1:25-cv-00680-SLP Document 5 Filed 07/03/25 Page 3 of 8

11. SAP also told Hickory Farms that pricing was based on an even distribution of daily truck loads (no more than twelve truck loads per day). Uneven delivery distribution requiring more than twelve trucks loaded per day necessitates overtime charges outside of the SAP's negotiated pricing.

12. Once the parties agreed on a price, Hickory Farms and SAP both signed a Contract Packaging Agreement dated April 16, 2024 (the "Contracting Document"). The Contracting Document states that the specifications for the services are supposed to be set forth in Exhibit D. Exhibit D, however, does not set forth in any specifications with particularity. Rather, the exhibit generically references "Customer Specific Requirements" without further detail.

13. On August 13, 2024, months after the parties signed the Contracting Document, Hickory Farms provided SAP with the instructions for packing the tins. The instructions called for stacking the tins with basically no structural supports:



14. Nothing in the design prevents the tins from toppling over in transport. SAP recognized this obvious design defect and immediately expressed concern. Among other things, SAP asked for a redesign that matched prior years' shipping configuration that did contain structural trays to keep the stacks from toppling in transport.

3

15. In response, Hickory Farms told SAP to use extra plastic wrap and airbags to keep the tins upright. The extra packaging was time consuming and expensive.

16. Making matters worse, Hickory Farms failed to schedule consistent deliveries. Some days Hickory Farms would schedule one truck. Other days, Hickory Farms would schedule more than twenty. Even on days where a reasonable number of trucks were scheduled, Hickory Farm's packaging errors often delayed loading times.

17. SAP eventually met with Hickory Farms and told Hickory Farms that SAP was forecasting cost overruns of $150,000. At that meeting, Hickory Farms acknowledged that the stacking design should have been road tested. Hickory Farms also asked SAP to continue work under a "partnership" whereby there would be a final accounting at the end of the year. In that final accounting, the parties would address the cost overruns and setoffs for shipments rejected by Walmart.

18. Upon completion of the project, SAP and Hickory Farms engaged in discussions to resolve the cost overruns and setoffs. SAP provided detailed information of $139,478 in additional costs. Hickory Farms countered with some chargebacks. After SAP showed errors in Hickory Farms paperwork, Hickory Farms agreed to chargebacks in the amount of $33,457.

19. Thereafter, Hickory Farms stopped responding and never confirmed the $106,021 difference owed to SAP after application of the chargebacks for Walmart rejected shipments.

20. Hickory Farms has paid nothing toward the additional costs SAP incurred as a result of Hickory Farms' poor planning and design.

**FIRST CLAIM FOR RELIEF**
(Promissory Estoppel / Breach of Contract)

21. SAP repeats, realleges, and incorporates by reference the foregoing Paragraphs of this Complaint.

4

22. SAP told Hickory Farms that it would charge overtime fees caused by Hickory Farms' failure to properly schedule deliveries and additional packaging costs.

23. If Hickory Farms refused, SAP would not have advanced the fees and packaging costs on Hickory Farms' behalf because SAP was never bound to make such advances.

24. Hickory Farms encouraged SAP's continued work, responding that the parties could settle cost overruns at the end of the holiday season as a "partnership."

25. SAP relied on Hickory Farms' promises and continued work as directed.

26. Hickory Farms should be estopped from reneging on its promise to account to SAP for the cost overruns.

27. Hickory Farms breached its promise, and failed to remit $106,021 to SAP that resulted from the promised accounting.

28. To the extent that Hickory Farms' promise for an end of year accounting formed a valid and binding contract, Hickory Farms breached the contract and judgment should be entered for $106,021.

29. To the extent that Hickory Farms breached a promise to account for cost overruns after SAP relied on the promise, Hickory Farms is liable to SAP for $106,021 under principles of promissory estoppel. Judgment should be entered accordingly.

30. SAP is entitled to pre-judgment and post-judgment interest on any judgment entered in its favor.

**SECOND CLAIM FOR RELIEF**
(Quantum Meruit and Unjust enrichment)

31. SAP repeats, realleges, and incorporates by reference the foregoing Paragraphs of this Complaint.

32. The Contracting Document is not a valid and binding contract because it does not define the specifications for the services SAP was supposed to provide.

33. In fact, the parties did not agree on specifications until months after they signed the Contracting Document.

34. SAP made clear that Hickory Farms' poor design and planning would result in additional charges that would require additional compensation.

35. SAP provided the benefit of its services to Hickory Farms.

36. SAP did not act officiously or gratuitously.

37. The benefit SAP provided is measurable, specifically the reasonable value of the services SAP provided to Hickory Farms.

38. Hickory Farms consciously accepted the benefit of SAP's services.

39. Hickory Farms is therefore liable to SAP for the reasonable value of SAP's services under the doctrines of quantum meruit and unjust enrichment.

WHEREFORE, Plaintiff SAP respectfully requests that the Court:

1. Enter judgment against Hickory Farms in the principal amount of $106,021, or some other amount as determined at trial;

2. Tax the costs of this action against Defendant as allowed by law;

3. Award pre-judgment and post-judgment interest on any award;

4. For a jury trial on all issues so triable; and

5. Grant any other relief that the Court may deem just and proper.

6

4902-9432-1226.v3

Respectfully submitted, this the 18th day of June, 2025.

*[signature]*

Clint S. Morse
 NC Bar No. 38384
 cmorse@brookspierce.com
BROOKS, PIERCE, MCLENDON,
 HUMPHREY & LEONARD, LLP
PO Box 26000
Greensboro, North Carolina 27420
Telephone: 336-271-3167
Facsimile: 336-232-9167

*Counsel for Plaintiff SAP*