# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Case No. 1:25-cv-00689-TDS-LPA

SOUTH ATLANTIC PACKAGING
CORPORATION, LLC,

      Plaintiff,

v.

HICKORY FARMS, LLC,

      Defendant.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

Introduction ............................................................................................ 1

Background ............................................................................................. 2

I.     The Packaging Agreement ............................................................ 3

II.    SAP's Allegations ........................................................................ 4

Questions Presented ............................................................................. 6

Legal Standard ...................................................................................... 6

Argument ................................................................................................ 7

I.     SAP fails to state a claim for breach of contract or promissory estoppel ......... 7

       A.     SAP fails to state claim for breach of contract because no separate
              contract exists, and the terms of the Packaging Agreement control ...... 8

              1.      Delaware law applies here .......................................... 8

              2.      SAP fails to plausibly allege breach of any contractual
                      obligation contained in the Packaging Agreement ................. 9

              3.      The parol evidence rule bars any breach of contract claim
                      based on oral statements or side agreements ...................... 11

              4.      No other written agreement exists ................................. 13

       B.     North Carolina does not recognize promissory estoppel as an
              affirmative cause of action .................................................... 14

II.    SAP's claim alleging theories of quantum meruit and unjust enrichment
       fails because the Packaging Agreement governs ................................... 14

Conclusion ............................................................................................. 19

Certificate of Compliance ................................................................... 20

## INTRODUCTION

Defendant Hickory Farms, LLC moves to dismiss all claims asserted in Plaintiff South Atlantic Packaging Corporation, LLC ("SAP")'s Complaint pursuant to Rule 12(b)(6). SAP seeks to recover $106,021 in alleged "unpaid charges" related to the packaging and shipping of Walmart holiday popcorn tins in 2024 that SAP handled for Hickory Farms. (Dkt. 5, Compl. ¶ 27.) SAP brings two claims: Count I is a claim for both promissory estoppel and breach of contract, and Count II is a claim for both quantum meruit and unjust enrichment. These claims fail as a matter of law because a valid, integrated written agreement governs the parties' relationship, sets an all-inclusive price, and forecloses the quasi-contract and promissory estoppel theories SAP now advances.

Hickory Farms and SAP entered into a Contract Packaging Agreement that included a merger clause, a severability clause, and "all-in" pricing terms covering labor, packaging, storage, labeling, and shipping preparation. The parties negotiated and agreed to these terms—including a valid choice-of-law provision selecting Delaware law to govern the Agreement—which did not authorize later surcharges for overtime or materials. The parties further expressly agreed that delivery scheduling was intended to be flexible and coordinated weekly. The Complaint attempts to recast SAP's dissatisfaction with the agreed-upon bargain as creating a separate oral or written "promise" to pay additional sums at the season's end. But the merger clause bars reliance on such alleged side agreements, and North Carolina law does not recognize an affirmative promissory estoppel claim like the one alleged in Count I. SAP's quasi-contract count likewise fails because an express contract

1

governs the same subject matter. Its alternative argument that the Packaging Agreement is not a valid contract because it did not provide exacting details on packaging specifications does not square with Delaware law, which applies in the interpretation of the contract provisions.

In sum, SAP knew what it agreed to, received the consideration it negotiated, and cannot demand more simply because the work proved more expensive than it expected. Because the Complaint fails to plead any plausible entitlement to relief, all claims against Hickory Farms should be dismissed with prejudice.

## BACKGROUND[1]

This dispute arises out of a "Contract Packaging Agreement" (the "Packaging Agreement") the parties executed on April 16, 2024. (*See* Dkt. 5, Compl. ¶ 12.) SAP references this document in its Complaint but did not attach a copy of it. Hickory Farms does so here. (*See* **Ex. A**, Packaging Agreement.)

The Court "may consider documents extrinsic to the complaint" without converting a motion to dismiss into a motion for summary judgment if the documents "are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014) (quoting *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009)). That is the case here,

---

[1] Hickory Farms disputes many allegations contained in the Complaint, but accepts the plausibly pleaded facts as true for purposes of this motion only. *See Patterson v. McDonald*, 220 F. Supp. 3d 634, 637 (M.D.N.C. 2016).

as the "Complaint assert[s] a claim for breach of the Agreement but failed to attach a copy of that contract," and Hickory Farms has "attached a copy of the Agreement to its Motion to Dismiss as Exhibit A." *Wireless Commc'ns, Inc. v. Epicor Software Corp.*, No. 3:10-CV-556-DSC, 2011 WL 90238, at *6 n.1 (W.D.N.C. Jan. 11, 2011).

## I. The Packaging Agreement

Defendant Hickory Farms "sells food gift tins filled with ready-to-eat products," including popcorn. (Ex. A at 1, 10.) Plaintiff SAP "is engaged in the business of manufacturing, packaging and distributing a variety of products." (*Id.* at 1.) The parties executed the Packaging Agreement on April 16, 2024, signed by Ray Chacon, Hickory Farms' Senior Vice President of Operations, and Julian Bossong, SAP's CEO. (*Id.* at 1, 9.) The purpose of the Packaging Agreement was for SAP to package and ship Hickory Farms' holiday popcorn tins to Walmart stores in 2024. (*Id.* at 1, 10; *see* Compl. ¶ 6.)

Section 5 of the Packaging Agreement addresses pricing. (Ex. A at 3.) It provides that Exhibit E to the Agreement would list the price of the products at issue and makes clear: "All prices are 'all in' pricing to include, but not limited to, the assembly, storage, labeling, receiving of inbound materials, preparing outbound shipments and are exclusive of, and Customer [Hickory Farms] shall be responsible for, all Taxes." (*Id.*) Exhibit E to the Packaging Agreement[2] likewise specifies that it lists "'All in' pricing for all tin designs." (*Id.* at 15.) Thus, the parties negotiated and agreed on pricing that included all labor and packaging

---

[2] Section 5 of the Packaging Agreement notes that Exhibit E is "attached hereto and incorporated herein by reference." (Ex. A at 3.)

that may have been required, and that pricing was never validly amended or renegotiated in writing or otherwise.

Section 7(a) of the Packaging Agreement addresses forecasts. (*Id.* at 4.) It provides that the parties "shall cooperate in good faith to develop rolling (1) week (by Product and pack type), non-binding order forecasts of [Hickory Farms'] needs for the Products," and that Hickory Farms "shall use commercially reasonable efforts to provides such forecasts at least two (2) business days prior to the start of the applicable week." (*Id.*) In other words, the parties contemplated in the formation of their agreement that orders and deliveries would not happen on a consistent schedule and that weekly forecasts—and adjustments to those forecasts—were necessary to account for the shipping issues that inherently and inevitably arise in this industry.

The Packaging Agreement expressly provides that it is "the entire agreement between Supplier and Customer with respect to the subject matter hereof" and "may be modified only by a writing duly signed by both Parties." (*Id.* at 7.) It also contains a severability clause, and a choice-of-law provision specifying that the "Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflict of laws principles." (*Id.*)

## II. SAP's Allegations

SAP claims that Hickory Farms owes it $106,021 for alleged "cost overruns" it incurred in performing its obligations under the Packaging Agreement. (Compl. ¶¶ 18–20.) The Complaint includes allegations regarding a change in the way the popcorn tins were

4

packaged in 2024 (as opposed to 2022 and 2023) and related communications between the parties. (*Id.* ¶¶ 7–10, 13–15.) SAP claims that because of the change, it had to implement "extra packaging [that] was time consuming and expensive" in order to "keep the tins upright" during transport. (*Id.* ¶ 15.) However, the Complaint fails to acknowledge that the Packaging Agreement explicitly states that the pricing provided for therein is "all in" and includes "the *assembly*, storage, *labeling*, receiving of inbound materials, [and] *preparing outbound shipments*." (Ex. A at 3 (emphases added).)

The Complaint also alleges that "Hickory Farms failed to schedule consistent deliveries," with more trucks being scheduled on some days than others, and that "Hickory Farm's [sic] packaging errors often delayed loading times." (Compl. ¶ 16.) It alleges that before the parties signed the Packaging Agreement, SAP "told Hickory Farms that pricing was based on an even distribution of daily truck loads (no more than twelve truck loads per day)" and that "[u]neven delivery distribution requiring more than twelve trucks loaded per day necessitates overtime charges outside of the SAP's negotiated pricing." (*Id.* ¶ 11.) However, none of these elements were included in the parties' fully executed and binding Agreement. SAP ignores that the Packaging Agreement merely required the parties to "cooperate in good faith to develop rolling (1) week (by Product and pack type), *non-binding order forecasts* of Customer's needs for the Products." (Ex. A at 2 (emphasis added).)

SAP claims that it told Hickory Farms that it was "forecasting cost overruns of $150,000" and that Hickory Farms "asked SAP to continue work under a 'partnership' whereby there would be a final accounting at the end of the year," in which "the parties

would address the cost overruns and setoffs for shipments rejected by Walmart." (Compl. ¶ 17.) But SAP does not allege that the parties ever agreed to a modification of the Packaging Agreement in "writing [and] duly signed by both Parties," as the Agreement required. (Ex. A at 7.) SAP nevertheless alleges that "Hickory Farms breached a promise to account for cost overruns," and either this alleged promise "formed a valid and binding contract" or "Hickory Farms is liable to SAP for $106,021 under principles of promissory estoppel." (Compl. ¶¶ 27–29.) SAP also claims in the alternative that the Packaging Agreement "is not a valid and binding contract because it does not define the specifications for the services SAP was supposed to provide." (*Id.* ¶ 32.) It asserts a single count alleging both unjust enrichment and quantum meruit under this alternative theory. (*Id.* ¶¶ 31–39.)

## QUESTIONS PRESENTED

I.     Whether Count I plausibly alleges either breach of contract or promissory estoppel where the contract at issue contains a merger clause and provides for "all in" pricing.

II.    Whether Count II plausibly alleges either unjust enrichment or quantum meruit where an express contract governs the parties' business relationship.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (cleaned up). A complaint's factual allegations are plausible if they "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, the Court accepts all well pleaded facts as true

6

and draws all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted). Rule 8 requires more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

As noted above, the Court may consider at the pleadings stage a contract that is "integral to and explicitly relied on in the complaint," even though the plaintiff chose not to attach it. *Tinsley*, 4 F. Supp. 3d at 819 (citation omitted). Where, as here, "a document is properly considered in the context of a motion to dismiss," if "it conflicts with the bare allegations of the complaint, the document prevails." *Id.*

## ARGUMENT

### I. SAP fails to state a claim for breach of contract or promissory estoppel.

Count I purports to allege both promissory estoppel and breach of contract in the same claim. (Compl. ¶¶ 21–30.) SAP claims that during its performance under the Packaging Agreement, it "told Hickory Farms that it would charge overtime fees caused by Hickory Farms' failure to properly schedule deliveries and additional packaging costs" and that "[i]f Hickory Farms refused, SAP would not have advanced the fees and packaging costs on Hickory Farms' behalf because SAP was never bound to make such advances." (*Id.* ¶¶ 22–23.) SAP alleges that "Hickory Farms encouraged SAP's continued work, responding that the parties could settle cost overruns at the end of the holiday season as a 'partnership'" and that "SAP relied on Hickory Farms' promises and continued work as

7

directed." (*Id.* ¶¶ 24–25.) Even assuming these allegations are true for purposes of evaluating this motion, Count I fails.

### A. SAP fails to state claim for breach of contract because no separate contract exists, and the terms of the Packaging Agreement control.

#### 1. Delaware law applies here.

The Packaging Agreement contains a choice-of-law provision specifying that the "Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflict of laws principles." (Ex. A at 7.) A federal court sitting in diversity applies the forum state's choice-of-law rules. *Macregen, Inc. v. Burnette*, No. 1:19CV591, 2021 WL 2682050, at *2 (M.D.N.C. June 30, 2021). "North Carolina courts hold 'that where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.'" *Id.* (quoting *Tanglewood Land Co., Inc. v. Byrd*, 261 S.E.2d 655, 656 (N.C. 1980)). The only exceptions are if there is no "reasonable basis for the parties' choice" or if applying the chosen state's law would offend a "fundamental policy" of a state that has a "materially greater interest" in the issue involved (and whose law would apply if there were no choice-of-law provision). *Id.* at *3 (quoting *Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 574 S.E.2d 31, 33–34 (N.C. Ct. App. 2002)).

Neither exception applies here. First, the parties had a "reasonable basis for selecting Delaware," *id.*, because, as SAP acknowledges, "Hickory Farms, LLC is a Delaware limited liability company." (Compl. ¶ 2.) Second, "there is no indication that applying

8

Delaware law would offend North Carolina public policy." *Macregen*, 2021 WL 2682050, at *3 (finding Delaware law applied pursuant to a similarly worded choice-of-law provision); *see Commercial Credit Grp., Inc. v. Falcon Equip., LLC*, No. 3:09cv376-DSX, 2010 WL 144101, at *4 (W.D.N.C. Jan. 8, 2010) (finding that parties to a promissory note had a reasonable basis for choosing Delaware law because the plaintiff was a Delaware corporation and application of Delaware law did not violate North Carolina public policy). Delaware law therefore applies in the interpretation of the Agreement, but Hickory Farms cites both Delaware and North Carolina law below (and the choice-of-law question does not affect the result in this case).

### 2. SAP fails to plausibly allege breach of any contractual obligation contained in the Packaging Agreement.

The elements of breach of contract under Delaware law are (1) the existence of a contract, (2) breach of an obligation imposed by that contract, and (3) resulting damages to the plaintiff. *Macregen*, 2021 WL 2682050, at *3 (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). Contracts must be construed "as a whole" to give effect to the parties' intent, and where the contract language is "clear and unambiguous," courts ascertain the parties' intent by giving the language "its ordinary and usual meaning." *Id.* (quoting *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

To the extent SAP attempts to ground a breach of contract claim in the Packaging Agreement, it fails at the second element. That is, the Packaging Agreement does not contain the alleged obligation that SAP claims Hickory Farms breached. Rather, the Packaging

9

Agreement's language affirmatively contradicts SAP's allegations. First, SAP claims that Hickory Farms failed to pay it $106,021 for alleged "cost overruns" associated with implementing "extra packaging" in order to "keep the tins upright" during transport. (Compl. ¶ 15.) However, the Packaging Agreement explicitly states that the pricing provided for therein is "all in" and includes "the *assembly*, storage, labeling, receiving of inbound materials, [and] *preparing outbound shipments*." (Ex. A at 3 (emphases added).) These services were thus already bargained for and included in the price set by the parties in the Agreement.

Second, SAP alleges that Hickory Farms "failed to schedule consistent deliveries," with more trucks being scheduled on some days than others, and that "Hickory Farm's [sic] packaging errors often delayed loading times." (Compl. ¶ 16.) However, the Packaging Agreement expressly required the parties to "cooperate in good faith to develop rolling (1) week (by Product and pack type), *non-binding order forecasts* of Customer's needs for the Products." (Ex. A at 2 (emphasis added).) SAP does not allege that Hickory Farms failed to provide these forecasts or otherwise acted in bad faith. At most, SAP alleges its dissatisfaction with the forecasts Hickory Farms *did* provide. Relatedly, SAP alleges that before the parties signed the Packaging Agreement, SAP "told Hickory Farms that pricing was based on an even distribution of daily truck loads (no more than twelve truck loads per day)" and that "[u]neven delivery distribution requiring more than twelve trucks loaded per day necessitates overtime charges outside of the SAP's negotiated pricing." (Compl. ¶ 11.) But, this alleged obligation was never committed to writing; it does not appear and is indeed

10

contradicted by the Packaging Agreement's plain language stating that "forecasts of Customer's needs for the Products" are "non-binding." (Ex. A at 4.)

### 3. The parol evidence rule bars any breach of contract claim based on oral statements or side agreements.

Implicitly acknowledging that Hickory Farms did not contractually agree to what SAP now seeks, SAP purports to offer certain parol evidence to suggest the parties had a meeting of the minds that differed from what they included in the Packaging Agreement. Specifically, SAP alleges that before the parties executed the Packaging Agreement, SAP "told Hickory Farms that pricing was based on an even distribution of daily truck loads (no more than twelve truck loads per day)" and that "[u]neven delivery distribution requiring more than twelve trucks loaded per day necessitates overtime charges outside of the SAP's negotiated pricing"—another term not included in the Packaging Agreement. (Compl. ¶ 11.) SAP also claims that during performance: (1) "Hickory Farms told SAP to use extra plastic wrap and airbags to keep the tins upright," (2) SAP told Hickory Farms that it was "forecasting cost overruns of $150,000," and (3) Hickory Farms "asked SAP to continue work under a 'partnership' whereby there would be a final accounting at the end of the year," in which "the parties would address the cost overruns and setoffs for shipments rejected by Walmart." (*Id.* ¶¶ 15, 17.) To the extent SAP relies on alleged oral promises or side agreements, such reliance is barred by the parol evidence rule and the Packaging Agreement's merger clause.

The parol evidence rule bars "evidence of prior and contemporaneous negotiations

11

and agreements" to contradict or add to the terms of a fully integrated contract. *Melvin v. Principi*, No. 5:03-CV-968-FL(3), 2004 WL 3769429, at \*6 (E.D.N.C. Dec. 2, 2004) (cleaned up), *aff'd*, 141 F. App'x 194 (4th Cir. 2005). "Fully integrated" means that the writing "integrates all the terms of the contract" and supersedes "all other agreements relating to the transaction." *Id.* A merger clause "generally provides unambiguous and unassailable evidence of the parties' intent with reference to the terms of the contract," and creates a rebuttable presumption that the writing is "a complete and exclusive statement of the contract terms." *Id.* at \*7 (cleaned up); *accord Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 326 A.3d 356, 364 (Del. 2024); *Carrow v. Arnold*, No. CIV.A. 182-K, 2006 WL 3289582, at \*5 (Del. Ch. Oct. 31, 2006), *aff'd*, 933 A.2d 1249 (Del. 2007).

Section 20 of the Packaging Agreement contains such a merger clause. It provides: "This Agreement states the entire agreement between Supplier and Customer with respect to the subject matter hereof. This Agreement may be modified only by a writing duly signed by both Parties." (Ex. A at 7.) In *Melvin*, the court found that a merger clause with nearly identical language plainly demonstrated the complete integration of the parties' agreement, and granted the defendant's motion to dismiss. 2004 WL 3769429, at \*7 ("This Agreement is the entire Agreement between the parties and there are no other terms to this Agreement except those it specifies." (record citation omitted)). Accordingly, here, as in *Melvin*, the merger clause establishes a presumption that the Agreement is the complete and exclusive statement of the parties' contractual arrangement. *Id.* at \*8 (citation omitted); *accord A.I.C. Ltd. v. Mapco Petrol. Inc.*, 711 F. Supp. 1230, 1234 (D. Del.) (granting motion to dismiss and

12

refusing to consider parol evidence where integration clause provided that the parties "mutually agree to enter into the [consulting] agreement and agree that the following terms and conditions constitute the entire Agreement between [the parties] and may not be modified in any way except by a written document duly executed by both parties" (cleaned up)), *aff'd*, 888 F.2d 1378 (3d Cir. 1989).

Because SAP "has not alleged facts which negate the presumption of integration," the merger clause applies and bars SAP's reliance on parol evidence. *Melvin*, 2004 WL 3769429, at *8. To the extent SAP relies on parol evidence here, its claim fails as a matter of law. *See id.* at *9 ("In summary, the parol evidence rule precludes plaintiff from asserting an oral term altering the terms of his written settlement contract, where the written contract is plainly a complete integration of the parties['] agreement, and where plaintiff has not alleged facts sufficient to rebut the presumption of complete integration. Accordingly, plaintiff's breach of contract claim fails as a matter of law.").

### 4. No other written agreement exists.

To the extent SAP attempts to ground a breach of contract claim in some other purported "agreement," independent of the Packaging Agreement, it fails at the first element. SAP cannot plausibly allege a second written contract outside the scope of the parties' integrated agreement. Section 20 of the Packaging Agreement makes clear that "[t]his Agreement may be modified only by a writing duly signed by both Parties." (Ex. A at 7.) SAP does not allege that such a written modification was ever agreed to and signed by both parties.

13

## B. North Carolina does not recognize promissory estoppel as an affirmative cause of action.

To the extent SAP attempts to reframe Count I as asserting promissory estoppel rather than breach of contract, dismissal is still required. North Carolina does not recognize promissory estoppel as an affirmative cause of action. *Giuliani v. Duke Univ.*, No. 1:08-CV-502, 2009 WL 1408869, at *5 (M.D.N.C. May 19, 2009) (citing *Dealers Supply Co. v. Cheil Indus.*, 348 F. Supp. 2d 579, 587 (M.D.N.C. 2004)). In other words, a plaintiff cannot use promissory estoppel "in an offensive manner" to create a cause of action. *See Rudolph v. Buncombe Cty. Gov't*, 846 F. Supp. 2d 461, 477 (W.D.N.C.) (collecting authority), *aff'd*, 474 F. App'x 931 (4th Cir. 2012). SAP's claim for promissory estoppel should therefore be dismissed as a matter of law.

## II. SAP's claim alleging theories of quantum meruit and unjust enrichment fails because the Packaging Agreement governs.

Count II purports to allege both quantum meruit and unjust enrichment in the same claim. (Compl. ¶¶ 31–39.) Both are quasi-contract claims, and they fail for the same reason: SAP cannot pursue a quasi-contract claim where the parties have an express, written contract that governs.

The elements of quantum meruit under North Carolina law are: (1) services rendered to the defendant; (2) knowing and voluntary acceptance of those services; (3) services not rendered gratuitously; and (4) no express contract covering the same subject matter. *Wing v. Town of Landis*, 599 S.E.2d 431, 433 (N.C. Ct. App. 2004). Unjust enrichment requires showing that (1) a benefit was conferred, (2) the defendant consciously accepted

14

it, and (3) the benefit was not conferred gratuitously. *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005).

North Carolina courts have "consistently held" that "if there is a contract between the parties, the contract governs the claim, and the law will not imply a contract." *Paradigm Park Holdings, LLC v. Global Growth Holdings, Inc.*, 914 S.E.2d 20, 27 (N.C. Ct. App. 2025). This is true for unjust enrichment as well as quantum meruit (which are closely related). *Madison River*, 351 F. Supp. 2d at 446 (dismissing unjust enrichment claim where "all of the facts pleaded by [the plaintiff] allege there is an express contract between the parties"); *G&S Bus. Servs., Inc. v. Fast Fare, Inc.*, 380 S.E.2d 792, 795 (N.C. Ct. App. 1989) (affirming dismissal after finding the "plaintiff's allegation of [an] express contract bars its claim for *quantum meruit*").

Count II fails as a matter of law because "there is an express contract on the subject matter at issue." *Paradigm Park*, 914 S.E.2d at 27. Hickory Farms does not dispute the existence of a valid contract—it affirmatively asserts it. (Compl. ¶ 12.) In fact, SAP's own allegations arise out of the same transaction and subject matter as the Packaging Agreement. SAP alleges that Hickory Farms should pay an additional $106,021 for services SAP allegedly rendered, but Hickory Farms points to the parties' express agreement—which includes an "all-in" pricing structure that explicitly covers labor, packaging, storage, labeling, and shipping preparation. Nothing in the Packaging Agreement permits SAP to charge additional amounts, and the existence of this comprehensive pricing term forecloses any implied-in-law obligation to pay more under a quasi-contract theory.

15

SAP alleges in the alternative that the Packaging Agreement "states that the specifications for the services are supposed to be set forth in Exhibit D," that Exhibit D "does not set forth in any specifications with particularity," and that it instead "generically references 'Customer Specific Requirements' without further detail." (*Id.* ¶ 12; *see* Ex. A at 13.) SAP claims that this means the Packaging Agreement "is not a valid and binding contract because it does not define the specifications for the services SAP was supposed to provide." (Compl. ¶ 32.) However, the face of the Packaging Agreement shows that it meets the elements for a valid contract. "[A] valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010). The Packaging Agreement's plain language manifests the parties' intent to bind one another contractually. *See id.* Both parties signed it and they exchanged consideration. *Id.* That is, Hickory Farms agreed to pay a specified "all in" price, and SAP agreed to perform manufacturing, packaging, and distributing services for Hickory Farms. (Ex. A at 1–3, 14.)

Whether a contract's terms are sufficiently definite is a question of law, suitable for resolution at this stage. *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018); *see CKSJB Holdings LLC v. EPAM Sys., Inc.*, 837 F. App'x 901, 903 (3d Cir. 2020). "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Eagle Force*, 187 A.3d at 1232

16

(holding that the essential terms of a contribution agreement were sufficiently definite).
Here, the Packaging Agreement sufficiently defines its terms, including SAP's obligations.
The preamble makes clear that SAP "will package and sell to Customer the Products
subject to the terms and conditions set forth in this Agreement." (Ex. A at 1.) The
Agreement provides details in its text and exhibits that further describe SAP's obligations.
(*See id.* at 1–8, 10–20.)

SAP distorts the Packaging Agreement's plain language by asserting that "the spec-
ifications for the services are supposed to be set forth in Exhibit D." (Compl. ¶ 12; *see* Ex.
A at 13.) Section 5 does not say that Exhibit D should exhaustively list all specifics of how
SAP should package the products at issue. Rather, it says that SAP "shall comply with all
of the product specifications, Customer's customer specifications and packaging obliga-
tions listed on Exhibit D attached hereto and incorporated herein by reference (collectively,
the 'Specifications')." (Ex. A at 3.) That language makes clear that Exhibit D is a reference
point—not the sole source of all specifications.

SAP's position here ignores the commercial reality reflected in the Agreement: SAP
is a sophisticated entity "engaged in the business of manufacturing, packaging and distrib-
uting a variety of products." (*Id.* at 1.) It was SAP's responsibility to know what proper
packaging required and to incorporate those requirements into its pricing. The parties exe-
cuted the Agreement "based upon the premise that each party will in good faith make rea-
sonable effort to meet its obligations under the contract." *J.A. Jones Constr. Co. v. City of
Dover*, 372 A.2d 540, 551 (Del. Super. Ct. 1977). SAP cannot now claim the contract is void

simply because Exhibit D did not spoon-feed it every detail of its own core competency.

Additionally, "Delaware upholds the freedom of contract and enforces as a matter of fundamental public policy the voluntary agreements of sophisticated parties." *In re Altaba, Inc.*, No. CV 2020-0413-JTL, 2021 WL 4705176 (Del. Ch. Oct. 8, 2021) (citation omitted). Sophisticated parties "can and should make their own judgments about the risk they should bear," and courts are "especially chary about relieving sophisticated business entities of the burden of freely negotiated contracts." *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 566 (Del. Ch. 2023) (cleaned up). These cases indicate that in contracts between sophisticated parties, courts are less likely to require detailed performance instructions, as such parties are presumed to understand and agree upon the essential terms of their agreements. Indeed, SAP's factual allegations show that it was not left confused or uncertain about how to fulfill its obligations under the Packaging Agreement. Rather, the core of SAP's Complaint is that the method of packaging *it chose to utilize* was more "time consuming and expensive" than it anticipated. (Compl. ¶ 15.) When SAP made that decision, it knew (or should have known) that the Packaging Agreement's "all in" pricing did not authorize later surcharges for overtime or materials. All of the elements of a valid contract are undisputably present here.

SAP's attempt to reframe this contract dispute as a quasi-contract claim fails out of the gate. The services were performed under a valid agreement pursuant to which SAP received valuable consideration. Nothing was outside the scope, nothing was gratuitous, and nothing justifies a claim for quantum meruit or unjust enrichment. Because the

18

relationship between the parties is defined by a valid and enforceable contract, and because SAP fails to allege facts showing that any benefit was conferred outside the scope of that contract, its claims for quantum meruit and unjust enrichment fail and should be dismissed.

## CONCLUSION

For the reasons discussed above, the Court should dismiss SAP's Complaint with prejudice under Rule 12(b)(6).

This 27th day of August 2025.

Respectfully submitted,

*/s/ Benjamin S. Morrell*

Elizabeth E. Babbitt (by special appearance)
Benjamin S. Morrell (NC Bar No. 56676)
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
ebabbit@taftlaw.com
bmorrell@taftlaw.com

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word-count limitation of Local Rule 7.3(d)(1), as it contains fewer than 6,250 words—excluding the parts of the brief exempted by Local Rule 7.3(d)(1)—as reported by the word-processing software (Microsoft Word).

This 27th day of August 2025.

*/s/ Benjamin S. Morrell*

20