UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:25-cv-00689-TDS-LPA

| | |
|---|---|
| SOUTH ATLANTIC PACKAGING CORPORATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HICKORY FARMS, LLC, <br><br> Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS** |

Hickory Farms paid SAP hundreds of thousands of dollars for its work packaging and shipping Hickory Farms's products pursuant to the Packaging Agreement. SAP's response in opposition to Hickory Farms's motion to dismiss correctly recognizes that the core issue here is whether the Agreement "precludes SAP's right to get paid" the additional $106,021 it seeks in this lawsuit—over and above what Hickory Farms already paid. (Dkt. 6, Pl.'s Resp. at 6.) SAP is not entitled to any further money from Hickory Farms for two reasons. First, the Agreement's merger clause precludes SAP from relying on parol evidence or asserting the existence of an oral agreement on the same subject matter as the written, fully integrated Packaging Agreement. (*See* Dkt. 11, Memo. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") at 11–13.) Second, the existence of a valid contract with Hickory Farms precludes SAP from asserting quasi-contract claims against Hickory Farms, including quantum meruit and unjust enrichment. (*See id.* at 15.)

SAP is thus left to argue that the Packaging Agreement is not a valid contract. (Pl.'s

Resp. at 6–8.) However, its position finds no support in fact or law. SAP distorts the Agreement's language to argue that key provisions are missing; the actual text shows that the Agreement left the details regarding packaging products to SAP, the expert in packaging products. And, SAP does not provide authority in support of its argument that certain details it says are missing from the Agreement regarding how SAP was supposed to package Hickory Farms's products constitutes a "material term" sufficient to render the Packaging Agreement so indefinite that it cannot be a valid, enforceable contract. The cases SAP cites are inapposite, as they did not involve a written, signed, fully integrated agreement, like the one here, and are therefore readily distinguishable. Because these issues turn on the legal question of contract interpretation, they can and should be resolved here on a Rule 12(b)(6) motion. *MicroStrategy Inc. v. Acacia Research Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *5 (Del. Ch. Dec. 30, 2010); *see Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018).

Finally, SAP abandons its promissory estoppel claim by failing to address Hickory Farms's arguments showing that it must be dismissed. For these reasons, discussed more fully below, the motion to dismiss should be granted.

I.   **The Packaging Agreement is a valid contract.**

SAP implicitly acknowledges that its Complaint can state a claim for relief only if the Packaging Agreement is determined to be invalid. (*See* Pl.'s Resp. at 6.) Its only argument for invalidity is that the Agreement "does not define SAP's obligations in any material way"—specifically, that it does not include "customer specifications and packing

2

Case 1:25-cv-00689-TDS-LPA   Document 15   Filed 10/22/25   Page 2 of 11

obligations." (*Id.* at 7.) However, this misreads the Packaging Agreement, which did have all materials terms and is therefore enforceable. (*See* Def.'s Br. at 16–18.)

SAP cites only two cases on this issue, and neither helps it. First, it cites *Riverside Risk Advisors LLC v. Chao*, for the general proposition that a contract must contain all material terms to be enforceable. No. 2019-0789-KSJM, 2022 WL 14672745, at *27 (Del. Ch. Oct. 26, 2022), *as corrected* (Oct. 28, 2022), *aff'd*, 303 A.3d 51 (Del. 2023). But the substance of this case does not support its argument here. In *Riverside*, the court rejected the defendant's counterclaims for breach of contract and unjust enrichment where she alleged that the plaintiff agreed to give her a 4% ownership interest in the company at issue. *Id.* at *23. However, there was no written agreement whatsoever saying so. *See id.* ("Chao was not made a Riverside Member under the terms of the LegalZoom Agreement . . . ."). The court thus had to examine the "hodgepodge of facts in the record regarding Chao's interests" and the parties' conduct, and concluded that "the Riverside Parties satisfied any agreement that they reached with" her. *Id.* at *27–28. Here, by contrast, there is a written, fully integrated agreement, whose terms, including the parties' obligations, are detailed throughout 20 pages of negotiated terms.

SAP also argues that the parties' "subsequent negotiations and conduct inconsistent with a binding agreement" demonstrates that the parties did not intend the Packaging Agreement to be "the completion of all negotiations." (Pl.'s Resp. at 7 (cleaned up).) First, the Packaging Agreement's merger clause explicitly contradicts this argument by making clear that "[t]his Agreement states the *entire* agreement between Supplier and

3

Customer with respect to the subject matter hereof." (Dkt. 10-1, Ex. A to Def.'s Mot. to Dismiss ("Packaging Agreement") at 7 (emphasis added).) Second, the case SAP cites here, *Alatus Aerosystems v. Triumph Aerostructures, LLC*, does not help its argument, for the same reason as *Riverside*: there was no written agreement. No. N20C-12-038 EMD CCLD, 2021 WL 6122106, at *1 (Del. Super. Ct. Dec. 27, 2021). Specifically, the plaintiff sued the defendant to enforce a purported settlement agreement the parties had negotiated over "but failed to come to any agreement." *Id.* at *5. The plaintiff cobbled together the draft, unsigned settlement agreement with emails exchanged by the parties' counsel over the course of eight days and argued that they combined to make a binding agreement. *Id.*

The *Alatus* court disagreed. It found that the parties' communications showed the parties had not agreed to an effective date for the settlement agreement, which constituted a material term because one party "had questions about past due open orders, and that these remaining deliveries could disrupt an agreement as to the timing of the mutual releases." *Id.* at *7; *see id.* at *10 ("Since January 2021, when Alatus argues the parties reached a binding agreement, both parties have exchanged competing settlement proposals with materially different terms."). The court also found that the document that the plaintiff purported to be a final settlement agreement "include[d] the condition that the parties sign an agreement for it to be final," and this never occurred. *Id.* at *11. In contrast, here, again, there was a detailed, written, signed, and fully integrated agreement between the parties, distinguishing both cases SAP cites.

No caselaw supports SAP's bare assertion that the absence of certain details

regarding how SAP was to package Hickory Farms's products constituted a material term sufficient to render the Packaging Agreement invalid. By contrast, the Second Restatement, which "Delaware courts have often looked to . . . as persuasive authority for interpreting basic contract principles," *Thompson St. Capital Partners IV, L.P. v. Sonova U.S. Hearing Instruments, LLC*, 340 A.3d 1151, 1168–69 (Del. 2025), makes clear that where an "agreement is otherwise sufficiently definite to be a contract, it is not made invalid by the fact that it leaves particulars of performance to be specified by one of the parties," Restatement (Second) of Contracts § 34 cmt. (a) (1981). That is the case here, as the Packaging Agreement's terms indicate that the exact specifics of how to package the products at issue were left to SAP—the expert on packaging. The Agreement contains 20 pages of detail that render it sufficiently definite.

Additionally, "[p]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed." Restatement (Second) of Contracts § 34(2) (1981). The Complaint's allegations show that the parties *fully* performed under the Packaging Agreement here. (Dkt. 5, Compl. ¶¶ 6, 13–18.) SAP packaged and shipped Hickory Farms's products, and Hickory Farms paid SAP for these services. This further undercuts SAP's argument that the Packaging Agreement was too indefinite to constitute a valid contract, as well as its assertion that the parties' conduct is "inconsistent with a binding agreement." (Pl.'s Resp. at 7 (cleaned up).) The parties' performance of their obligations is consistent with a valid, binding agreement.

SAP alleges that "Hickory Farms presented its unreasonable design in August

5

(months after signing the Contracting Document)" and argues that "[n]obody knew or could have known what Hickory Farms meant by 'customer specific requirements' in April 2024." (Pl.'s Resp. at 7, 8.) However, as discussed above, the Packaging Agreement granted SAP discretion regarding the exact method of packaging. (*See also* Def.'s Br. at 16–19.)

On its face, the Agreement did not include the allegedly "unreasonable design," meaning that design was not part of the contract, and SAP's decision to use that design despite its own misgivings was gratuitous and its own folly. SAP has no legal remedy for a business decision it has now decided was imprudent in hindsight. *See Grunstein v. Silva*, No. CIV.A. 3932-VCN, 2014 WL 4473641, at *36–37 (Del. Ch. Sept. 5, 2014) (rejecting contractual and quasi-contract claims regarding services "provided beyond those which [the party] was contractually obligated to provide"), *aff'd*, 113 A.3d 1080 (Del. 2015).

II. **Because the Packaging Agreement is a valid, fully integrated contract, SAP's breach of contract and quasi-contract claims covering the same subject matter must be dismissed.**

SAP argues that Count I states a claim for breach of contract, though it concedes it cannot point to any provision of the Packaging Agreement that Hickory Farms purportedly breached. (Pl.'s Resp. at 4–5.) SAP instead argues that the parties had some other alleged "agreement"—wholly separate from the Packaging Agreement—in which "SAP agreed to do the things necessary to ship the tins pursuant to Hickory Farms's unstable design, and in exchange, Hickory Farms promised to settle any cost overruns at the end of the season." (*Id.* at 5.) However, as explained in Hickory Farms's initial memorandum of law, the

parol evidence rule (which is a "rule of substantive law and not of evidence" despite its name, *Carey v. Shellburne, Inc.*, 215 A.2d 450, 456 (Del. Ch. 1965), *aff'd*, 224 A.2d 400 (Del. 1966)), bars reliance on prior and contemporaneous negotiations and agreements to contradict or add to the Packaging Agreement's terms because it is a fully integrated contract by virtue of its merger clause. (Def.'s Br. at 11–13); *see Carey*, 224 A.2d at 294–95 (affirming grant of motion to dismiss where the lower court refused to consider the plaintiffs' allegations premised on parol evidence). And the merger clause makes clear that the Packaging Agreement "may be modified only by a writing duly signed by both Parties." (Packaging Agreement at 7.) SAP does not allege that any such written modification occurred.

SAP offers no response to Hickory Farms's arguments in its Response brief. It merely repeats the Complaint's alternative theory that the Packaging Agreement is not a valid contract. It is, for the reasons discussed above, and as a result, SAP's breach of contract claim premised on alleged parol evidence must be dismissed.

Because the Packaging Agreement is a valid contract, and SAP's quantum meruit and unjust enrichment claims cover the same subject matter, these quasi-contract claims must be dismissed as well. *See Vanwyk Textile Sys., B.V. v. Zimmer Machinery Am., Inc.*, 994 F. Supp. 350, 388 (W.D.N.C. 1997) ("[W]here a valid and enforceable contract exists governing a particular subject matter, it precludes recovery in quasi-contract for events arising out of the same subject matter." (citation omitted)). SAP cannot avoid this conclusion and offers no countervailing legal authority. Nor does it allege facts showing that any purported

7

benefit it conferred to Hickory Farms—namely, "extra packaging" services—is outside the scope of the Packaging Agreement. (*See* Compl. ¶ 15.) Accordingly, the Court should dismiss Count II.

### III. The promissory estoppel claim is abandoned.

Hickory Farms's initial memorandum of law explains that SAP's claim for promissory estoppel must be dismissed because North Carolina law does not recognize promissory estoppel as an affirmative cause of action. (Def.'s Br. at 14.) SAP's response does not respond to or otherwise address this argument. SAP has thus abandoned its claim for promissory estoppel, and the Court should therefore dismiss it. *Hilderbrand v. Pelham Transp. Corp.*, No. 1:20CV1020, 2021 WL 2681966, at *1 (M.D.N.C. June 30, 2021), (report and recommendation) (recommending dismissal where the plaintiffs' response to a motion to dismiss did not contest dismissal), *adopted*, 2021 WL 8322630 (M.D.N.C. Sept. 23, 2021); *see also Riverside*, 2022 WL 14672745, at *32 (noting that promissory estoppel "does not apply where a fully integrated, enforceable contract governs the promise at issue" (cleaned up)).

### IV. Conclusion

For the reasons discussed above and in Hickory Farms's initial memorandum of law, the Court should granted this motion and dismiss SAP's claims with prejudice.

This 22nd day of October 2025.

Respectfully submitted,

*/s/ Benjamin S. Morrell*

Elizabeth E. Babbitt (by special appearance)
Benjamin S. Morrell (NC Bar No. 56676)
Taft Stettinius & Hollister LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
ebabbitt@taftlaw.com
bmorrell@taftlaw.com

*Counsel for Defendant*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word-count limitation of Local Rule 7.3(d)(1), as it contains fewer than 3,125 words—excluding the parts of the brief exempted by Local Rule 7.3(d)(1)—as reported by the word-processing software (Microsoft Word).

This 22nd day of October 2025.

/s/ *Benjamin S. Morrell*

# CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I filed the foregoing document with the Clerk of the Court using the Court's CM/ECF filing system, which will send notice of such filing to all counsel of record.

This 22nd day of October 2025.

/s/ *Benjamin S. Morrell*